| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

JOSEPH CHRIS PERSONNEL SERVICES, INC., §
　　　　　　　　　　　　　　　　　　　§
　　　　　　　Plaintiff, §
　　　　　　　　　　　　　　　　　　　§
versus § CIVIL ACTION H-03-2341
　　　　　　　　　　　　　　　　　　　§
DONNA ROSSI, et al., §
　　　　　　　　　　　　　　　　　　　§
　　　　　　　Defendants. §

# Opinion on Summary Judgment

1.　*Introduction.*

　　A recruiting company sued three former workers for breach of contract, breach of fiduciary duty, and violations of the Texas Occupations Code. The workers counterclaimed for lost wages and attorneys fees. The workers have moved for summary judgment.

2.　*Background.*

　　Joseph Chris Personnel Services, Inc., recruits employees for national companies in commercial and residential real estate. Its main office is in Kingwood, Texas, but it has offices throughout the country. The Kingwood location has the company's computerized database with client, applicant, and vacancy information.

　　Albert Marco and Donna Rossi recruited for Joseph Chris in Wisconsin. Marco worked for the company for four and one-half years, and Rossi worked there for two years. Since leaving Joseph Chris, Marco and Rossi started Travato Group, Inc. – a recruiting company with regional offices throughout the county.

　　Cecilia Floyd started with the Joseph Chris in Texas. After about a year, she moved to open a branch for it in Georgia. She worked there for five years, until that

office was closed. After leaving Joseph Chris, Floyd started RESA Group, L.L.P. – a recruiting firm in Georgia.

Joseph Chris says that the defendants generated contacts for their new companies only by exploiting its database and business model. It sues them for breach of their employment contracts, breach of fiduciary duty, and violation of the Texas Occupations Code. Rossi and Marco sued for unpaid wages. Floyd seeks fees and costs.

In its summary judgment response – without leave from the court – Joseph Chris raises additional claims of tortious interference with accounts receivable and destruction of computer information and paper files. Because the company never pleaded these legal theories, it cannot initiate them in a response to motions for summary judgment.

The employment agreements chose Texas law to govern. The defendants moved to apply the law of the states where they worked. On August 30, 2004, this court granted Marco and Rossi's motion to apply Wisconsin law and Floyd's motion to apply the law of Georgia.

3.   *Arbitration*.

Joseph Chris argues that the court should not consider Rossi and Marco's motions for summary judgment because these defendants are bound by an arbitration clause. The court has ruled otherwise. While there is a presumption against waiver of an agreement to arbitrate, the presumption is rebutted where "the party seeking to enforce the agreement substantially invokes the judicial process to the other party's detriment." *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996) (*citing Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986).

In its original state-court petition, Joseph Chris disclosed that there was a provision in each of the defendant's agreements that required arbitration for "any controversy." Orig. Pet. 15. Specifically, it stated, "should this court determine that arbitration is required in the case, then Joseph Chris seeks an order in this case forcing defendants to appear at arbitration." *Id.* It then requested a "full trial on the merits," not an arbitration. *Id.* 19. Joseph Chris acknowledged and then waived its right to arbitrate.

Marco and Rossi removed the suit. Their case was later consolidated with Floyd's – her contract did not include an arbitration provision. Here, Joseph Chris demanded

a jury. The next month, the court held three pre-trial conferences. The parties discussed the facts, jurisdiction, and choice of law questions. Meanwhile – in between conferences – Joseph Chris was apparently contacting the defendants to discuss arbitration. Then, two hours before the hearing of August 18, Joseph Chris called defense counsel and said that it intended to pursue arbitration. Again, it did not mention its "plan" to the court. Still, the following day, Joseph Chris sent a "draft" of the demand for arbitration to the defendants.

On August 29, 2003, Joseph Chris filed with JAMS – Judicial Arbitration and Mediation Services. That same day, Rossi and Marco filed an emergency motion here to enjoin Joseph Chris from pursuing a duplicative proceeding. The court set a hearing for September 2.

At the hearing, Joseph Chris said that it was not prepared to respond. The court gave Joseph Chris two days to move to compel arbitration. Dkt. No. 26. The company incorrectly responded with a motion to reconsider the arbitration order; however, the motion substantively argued compulsion.

After ruling on the choice of law, the court erroneously ordered the parties to arbitrate and, in response to a motion to reconsider, vacated that order. Joseph Chris has waived whatever right it had to arbitrate by its acknowledgment of the clause and then by its repeated use of the courts and their ordinary techniques of litigation to attack the defendants. The court will consider the pending motions for summary judgment.

4. *Due Process.*

Next, Joseph Chris says that it cannot respond to the motions for summary judgment, citing violations of due process. It says that the court prohibited it from conducting discovery. This is false.

The court ordered the parties to refrain from exchanging unnecessary, boilerplate discovery requests. Instead, it asked each party what it needed to know, and then it ordered the other side to furnish that information. Dkt. No. 10,14,19,26. Joseph Chris has lists of the defendants' customers, applicants, and contracts. It has a list of the firms that contacted the defendants. It was ordered to compare this information with a list of its clients and candidates. The court also made the parties compile jointly a chronology.

Joseph Chris may not drag former employees into court and *then* search for evidence of a claim.  It had a duty to know – or at least reasonably believe – that they breached a valid contract before it sued them.  Here, Joseph Chris need not prove its case; it must only raise a fact issue.  Joseph Chris's counsel was asked what information he needed by the court, and then the court compelled the defendants to disclose whatever made sense.  The court is familiar with litigation being used to impose costs on the other side to the point that an unwarranted settlement is reached.  Joseph Chris has been uncooperative, unprepared, and belligerent in its behavior thus far.  Its plea for more discovery is a dodge.  The court will consider the motions for summary judgment.

5.  *Contracts.*

The dispute concerns two sections of the contracts. Section 7.0 covers competition.  For terminated employees, it is limited to a year but is completely unfettered in territory and activity.  It prohibits recruiters from (1) soliciting or accepting business from current and former clients and (2) hiring former or current employees.

Section 6.02 – read with section 5.01 – is the non-disclosure covenant.  It prohibits former employees from disclosing "confidential or proprietary information." According to Joseph Chris, confidential information includes everything in the company's database as well as "companies seeking or *likely to seek* the benefit of [Joseph Chris's] business and services" [emphasis added].

6.  *Rossi and Marco.*

Joseph Chris furnished the court with (1) a list of firms that Marco and Rossi dealt with for it and (2) a list of the companies that Marco and Rossi worked for at Travato. It says – through the affidavit of its lawyer and several exhibits – that of the fifteen companies that Rossi listed as her "business relationships" at Travato, nine were subjects of Marco's and Rossi's search assignments at Joseph Chris.  It says that each of the six companies that Marco listed were former clients of Joseph Chris.  It also points to overlap in candidates.

Not only is this a haphazard presentation of evidence, it is unpersuasive. First, Marco and Rossi say that these firms approached them, and Joseph Chris offers nothing to the contrary. Second, even Joseph Chris's most compelling evidence – Marco's list of firms that he contacted "from his personal rolodex" – does not create a fact issue. According to Joseph Chris, Marco and Rossi conducted hundreds of searches for hundreds of firms. *See* Summ. J. Reply 5. That Marco "searched" a firm for Joseph Chris in 1999 – or even within a year of his termination – does not suggest a proprietary relationship without more. Joseph Chris cannot forbid Rossi from soliciting a firm in Virginia that she searched for it on three occasions in 2002.

> Under Wisconsin law,
>
> A covenant . . . within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant . . . imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465 (2002); *see Gen. Med. Corp. v. Kobs*, 507 N.W.2d 281, 384 (Wis. Ct. App. 1993). This statute covers both non-compete and non-disclosure provisions. *Tatge v. Chambers & Owen, Inc.,* 579 N.W.2d 217, 222 (Wis. 1998).

The non-compete provision is substantively and geographically boundless. For one year, it barred Rossi and Marco from working in any capacity anywhere in the world for a company that recruits. It also prohibited them from hiring anyone who had ever worked for Joseph Chris in any capacity. Finally, they could not solicit former customers, regardless of how long it had been since Joseph Chris had worked for them. According to the contract, Rossi and Marco could not move to a state – where they had never worked – to place candidates at a company that had accepted a single worker from Joseph Chris when it opened in 1977. Additionally, the Travato Group could never hire a recruiter who once had worked as a Joseph Chris janitor.

The contract also prevented Rossi and Marco from *ever* using or disclosing any company that ever purchased – or might some day purchase – Joseph Chris's services.

There is no reasonable explanation for this requirement. It serves only as a threat to paralyze Joseph Chris workers.

The contracts are unenforceable. Because Wisconsin law is absolute, forbidding reformation, they are void.

7. *Floyd.*

In Georgia, contracts that restrain trade or lessen competition are contrary to public policy. Ga. Const. art. 3, § VI; Ga. Code Ann. § 13-8-2(a)(2)(2004). Whether a restraint of time, geography, or activity is reasonable is a question of law. *Rollins Protective Servs. Co. v. Palermo*, 287 S.E.2d 546 (Ga. 1982). If a contractual restraint is invalid, then all non-competition provisions are unenforceable. *T.V. Tempo, Inv. v. T.V. Venture, Inc.*, 262 S.E.2d 54 (Ga. 1979).

The contract inhibits Floyd from working in Georgia – where Joseph Chris chose to close its business – or any other state for at least a year. It forbids her from hiring the workers who Joseph Chris terminated when it closed the Georgia office. It prevents her from accepting business from companies that have contacted her in Joseph Chris's absence.

Finally, under this disclosure provision, Joseph Chris could prohibit Floyd from "using" information that exists in the database, even if she finds it elsewhere. She is also required to predict – and then avoid – Joseph Chris's future clients. These are not mere marginal restraints to protect the employer's goodwill that has attached to an individual; they require that ex-employees leave the business for a year and leave Joseph Chris's customers and employees free from open competition forever. The contract is unreasonable and, therefore, void.

8. *Other Theories.*

Joseph Chris also claims that the defendants violated the Texas Occupations Code and breached a fiduciary duty to it. These claims, too, fail.

The code states that an employee of a personnel service may not disclose information about an applicant, an employer, an employment position, or the operation of the personnel service. *See* Tex. Occ. Code §§ 2501.001, 2501.101. Not only does the

scope of this provision conflict with the contract laws of Wisconsin and Georgia, but Texas may not regulate recruiters – or restrain trade – in those states.

Next, Joseph Chris says that the defendants breached their fiduciary duties to the company. This common law duty was superceded by the contractual agreement between the parties. Joseph Chris categorically listed its expectations of the recruiters in the employment contracts. The law will not allow an employer the protection of the common law after a failed attempt to misuse contract.

Even if the duty had not been superceded, the claim would fail. Joseph Chris says that Rossi, Marco, and Floyd acted without good faith when they disclosed confidential information and trade secrets – both before and after their terminations. Orig. Pet. 13. Specifically, it says that the recruiters stole candidate resumes and other proprietary information while they worked for Joseph Chris. It, however, furnishes no objective evidence to support this serious claim like a trade secret, which would not include a telephone-book listing of commercial real-estate brokers and developers.

Following termination, common-law duties would be extinguished except for genuine trade secrets.

9. *Commissions.*

Rossi and Marco are seeking unpaid wages. They claim that Joseph Chris breached its obligation to them when it did not pay them for (1) placements they made and (2) retaining companies. They say that they are entitled to compensation based on revenue collected by Joseph Chris after their terminations.

Specifically, Rossi says that she is due payments from two clients – Parkside Senior Services and Metroplex, Inc. Shortly after her termination, she submitted a wage claim to the Wisconsin Department of Workforce Development. On April 30, 2003, Joseph Chris admitted that it owed the money, but said that it was holding the funds until the expiration of its replacement guarantee obligations with the client. The department decided that Joseph Chris owed the money. When it did not pay, the department forwarded the claim to the district attorney's office. Even still, Rossi is without the wages.

Marco believes that he is due compensation on an invoice issued to Bank Atlantic, two retainer payments from Broe Companies, and one retainer from Realti Corporation.

Once again Joseph Chris treats the court to its combination of stupid and mean. The company – with a straight corporate face – says that it cannot respond to the wage claims because it has not been allowed discovery. It says that it was forced to stipulate to a "theoretical sum." Summ. J. Reply 20.

Joseph Chris need not collect information about its own business transactions from its ex-employees. It has the invoices that it sent to the clients. It has the records of the payments it received. It also knows the commission rates of Rossi and Marco. There is nothing left to discover. Besides, it is under an obligation of federal laws accurately to account for its workers and their pay.

Never conceding that it owes the wages, Joseph Chris argues that the payments should be offset. Wisconsin law allows a deduction from wages for "defective or faulty workmanship, lost or stolen property, or damage to property" if the worker is "held liable in a court." Wis. Stat. § 103.455 (2002). It argues that Marco and Rossi stole data from its computers.

Because Joseph Chris did not refute the allegation, it owes Rossi $23,550 and Marco $37,250. Additionally, Wisconsin assesses penalties against employers that do not comply with the wage payment statute. Because Rossi filed an administrative complaint before filing this claim, the court may award her penalty fees of one-hundred percent of the unpaid wages. Marco did not file a claim with the department and, therefore, he is entitled to fifty percent of the unpaid wages. Wisc. Stat. §109.11(2)(a)(2002).

9. *Remaining Accusations.*

Joseph Chris says that Rossi did not return over one-half of the resumes that he possessed. It also says that Rossi did not return applicant files or her client records. Finally, Joseph Chris has accused Floyd of stealing 1,200 resumes. It says that she also failed to return client records.

By December 15, 2005, Joseph Chris must submit cogent, well-organized documentary or accounting evidence that supports these allegations to the court.

10. *Conclusion.*

The contracts are void. Sound social and economic reasons support the enforcement of covenants not to compete to the extent that they protect the employer's (a) goodwill that is necessarily invested in individuals, (b) proprietary data, and (c) investment in training.

Signed November 15, 2005, at Houston, Texas.

                                      Lynn N. Hughes
                                  United States District Judge